[No. 11211.   Department One.   January 11, 1915.]

JOHN DIBERT *et al., Appellants,* v. MORITZ PETERSEN,
*Respondent.*[1]

CANCELLATION OF INSTRUMENTS—FRAUD—WANT OF CONSIDERATION
—EVIDENCE—SUFFICIENCY.  Parties conveying away their realty for
an inadequate consideration, in reliance upon the representations of
a fellow countryman that there was danger of losing it, their object
being to divest themselves temporarily with a view to protecting
themselves against creditors, are entitled to a cancellation of the
deed on refunding to the grantee his outlay occasioned in conse-
quence of the transaction, with all accrued interest.

APPEAL—SUPERSEDEAS BOND—FORM.  A supersedeas bond on ap-
peal conditioned to pay the judgment, fairly indicating that it is
given on behalf of all the appellants, is sufficient, on objection first
made in the supreme court, although the wife of one of the princi-
pals did not join in the bond.

Appeal from a judgment of the superior court for Spo-
kane county, Baske, J., entered April 23, 1912, dismissing
an action for equitable relief, after a trial to the court.
Reversed.

*Perkins & Honefenger,* for appellants.
*Geo. W. Belt,* for respondent.

CHADWICK, J.—Plaintiffs brought this action against de-
fendant for the purpose of securing the reassignment of a
judgment which they had obtained against Ernest Dibert
and wife, which had been assigned to defendant; to cancel a
deed made by them to defendant, dated April 13, 1911, and
for the sum of $370, money received by defendant from the
sale of horses belonging to plaintiffs and retained by de-
fendant.  A *lis pendens* was filed against the real property
involved, which is described as that part of the southwest
quarter of section 2, township 21, north of range 43, east
Willamette Meridian, Spokane county, Washington, lying

[1] Reported in 145 Pac. 589.

and being west of what is known as the Pine Creek Road; also the south half of the southeast quarter of section 2, aforesaid; also the southeast quarter of the southwest quarter of section 2, aforesaid; also that part of the northeast quarter of section 11, township 21, north of range 43, east of the Willamette Meridian, lying and being north of what is known as the Plaza Road, in Spokane county, Washington.

All parties to the action are Germans, and while defendant lays some claim to an understanding of the English language and of business as transacted in this country, plaintiffs are almost entirely lacking in this respect. We feel justified in saying that they are extremely ignorant, and we cannot but doubt that they ever understood any material part of the facts and proceedings in this action. The judge of the court below, who understood German, was impelled to repeat in German questions asked by counsel, and in turn attempted to interpret their answers. It has been difficult for us to arrive at a definite conclusion.

Plaintiffs contend that defendant, through misrepresentations, fraud and deceit, induced them to assign the judgment which they held against Ernest Dibert to him, promising to reassign it and deed their property back if a new trial was not granted in a case waged by them against Ernest Dibert. Plaintiffs allege that both the assignment of the judgment and the conveyance of the property were without any consideration whatever and were made solely for the purpose of securing protection, as they supposed, from their creditors; that for the same reason they gave defendant a bill of sale of their horses, eight in number, and that defendant afterwards sold the horses for the sum of $370. They allege that defendant still retains possession of this money. All of the material allegations are denied by defendant, who asserts that plaintiffs requested him to take a bill of sale of the horses to keep Ernest Dibert from taking them away from them; that plaintiffs consented to the sale of the horses, and that they also gave their consent to the payment of $150 of the pur-

chase money to Belt & Powell, attorneys in their suit against
Ernest Dibert; that plaintiffs proposed to sell him the land
in question for $1,000, subject to a mortgage thereon of
$1,625 (one-half of which sum defendant had already as-
sumed when he purchased an adjoining piece of land from
Ernest Dibert which was also covered by mortgage); that
on the 13th day of April, 1911, defendant accepted said offer,
and plaintiffs thereupon conveyed said land to defendant, sub-
ject to said mortgage; that defendant gave plaintiffs two
notes, one for $400, payable November 1, 1911, and the other
for $600, payable November 1, 1912; that the $400 note
was transferred to Belt & Powell in payment of attorneys'
fees in the suit against Ernest Dibert; that plaintiffs were
indebted to defendant for money loaned and other advance-
ments in the sum of $307.50; that this sum was indorsed as
paid on the $600 note; that at the time plaintiffs conveyed
said land to defendant, they assigned to him the judgment
of $1,625 which they held against Ernest Dibert, they be-
lieving he would be able to collect it for them; that defendant,
at the request of plaintiffs, made a bill of sale to the pur-
chaser of the horses and offered the purchase money to plain-
tiffs, but that they requested him to pay $150 of said $370
to Belt & Powell, which he did, and that they requested him
to hold the balance, $220, subject to their demand; that they
have never called for it; that he paid interest amounting to
$54 on the mortgage of $1,625 which was placed on the
property when it was originally purchased, and taxes in the
sum of $51, after he purchased the property from plaintiffs.
Defendant also claims that plaintiffs are not prosecuting the
action in good faith.

At the time of the trial, defendant tendered $220, the bal-
ance of the purchase money remaining from the sale of the
horses, and also tendered the judgment. Both of these ten-
ders were accepted. The lower court found that plaintiffs

had failed to sustain the allegations of their complaint, and dismissed the action without cost to either party.

Respondent makes claim to an unselfish interest in plaintiffs' affairs, but it must be remembered that he already owned adjoining land, and in one instance, if not more, stated that he needed the Dibert land so as to make his holding complete, "altogether." Different witnesses testified that the land was worth from $5,000 to $6,000.

The lower court defined the issue of the case to be: (1) Did fraud and deceit enter into the transfer of the property? (2) Were fraudulent representations made to the plaintiffs with reference to the return or reconveyance of the property? (3) Was there any consideration?

Respondent claims that, as a part of the consideration for the sale of the land by appellants to him, they were to have the crop for the year 1911, he to have the pasture; and in support of this contention, sets up certain conversations and admissions of plaintiff John Dibert during the trial:

"Q. Now you had a crop in there at that time, didn't you? A. Yes. Q. Well, he gave you permission to take that off, didn't he? He said you could take it off? A. Well, he said, no, take that off, but he said, 'I will leave you that; I no want that.' Q. Oh, he said he would leave you that? Mr. Perkins: On whose land was this? Mr. Belt: On this land. Q. The crop was on this land, wasn't it? A. Yes. Q. Yes, and he said he would leave you that? A. Yes. Q. You could take it off? A. Yes."

Looking to the whole case, we are not disposed to hold this testimony to be destructive of appellants' case. They admit they knew that Petersen held the deed to the land, but they insist that he held it for the purpose of protecting their interests and would deed it back at any time they desired. If their belief was sustained by their understanding of their relation to respondent, they were entitled to the crop in any event.

Counsel for defendant further says:

"The complaint alleges, and John and Herman Dibert both testify, that respondent got them to give him the deed and the bill of sale by telling them that Ernest would take the land and horses away from them if he got a new trial, yet Herman says: Q. Didn't I (counsel) tell you that Ernest, after the trial of the case and after Ernest had made a motion for a new trial, if he were to get a new trial, he couldn't possibly get the horses back, and he couldn't possibly get the land back, because he had never claimed them? A. Yes."

But counsel is perhaps unconsciously assuming the ability of the witness to reason and to comprehend the transaction.

Nor should appellants be held to have lost their right to assert an interest in the land, if any they have, because they were told by counsel for respondent, at a time when respondent offered to deed the land back, that "this was their opportunity," and because they did not do so their conduct should stand as a bar to their present assertion of title to the land; but when it is understood that the plaintiffs could hardly make themselves understood in the English language, and that whatever counsel said to them must have been talked over in German with the respondent, we are not satisfied that they had any understanding other than that the respondent was holding the land for them. Then, too, the consideration seems inadequate. If a new trial had been granted in the case of appellants v. Ernest Dibert, he could not have taken the land because he did not claim it. There was no excuse, certainly none is shown, for the transfer of the judgment or for the bill of sale of the horses. We cannot believe, with the whole record before us, that appellants would have so acted if they had not been led, without understanding, into the transaction by the respondent. At the time the transfer was made, they had won a lawsuit against Ernest Dibert; a motion for a new trial was pending; respondent was their faithful and steadfast friend; he owned land adjoining; it was to

his interest to put fear into the hearts and minds of these plaintiffs so that he might involve the title in a way that he could eventually claim the land.

We confess our inability to say that we are positive that these things are so, but the probability is so overwhelming we think that if there ever was a case where the parties should be relegated to their original positions and made to deal with each other under the broad principles of equity, this is the case. Respondent offered at one time to deed the land back to plaintiffs. If he is given his money and his interest he should not now complain.

Neither are we impressed by the argument made by counsel for respondent that the testimony of the plaintiffs is contradictory. As we have said, plaintiffs, especially the witness John Dibert, had little comprehension of what was going on in the court room, owing to his lack of understanding of the English language. He does not even write his name, and is possibly of a lower order of mentality than the average man.

We believe that equity will be done in this case if respondent is given that which he put into the transaction. We have, therefore, decided to remand this case with instructions to the lower court to take an account of the affairs of the parties to this action, and to order a reconveyance of the land upon the payment to the respondent of his money with interest, and all sums paid in the way of taxes and for betterments, and the sums paid to Belt & Powell as attorneys' fees.

We have not overlooked respondent's motion to dismiss the appeal in this case. A notice of appeal was given by all of the parties plaintiff. The bond was not signed by Anna Dibert, the wife of Herman Dibert, although it was signed by John Dibert, Caroline Dibert and Herman Dibert. It is in form a supersedeas. No objection was made to the form of the bond in the court below.

The motion is denied under the authority of *Thomas v. Lee*, 74 Wash. 286, 133 Pac. 446, 134 Pac. 510. The juris-

diction of this court depends upon the notice of appeal and not upon the form of the bond.

Each party will pay their own costs on appeal.

CROW, C. J., ELLIS, and GOSE, JJ., concur.